UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOSE ALBERTO CISNEROS-PANAMENO,<br>Defendant. | Case No. 25-cr-00359-JD-1<br>**ORDER RE MOTION TO DISMISS** |

The United States charged defendant Jose Alberto Cisneros-Panameno with illegal reentry following removal in violation of 8 U.S.C. § 1326. Cisneros-Panameno asks to dismiss the information under Section 1326(d) on the grounds that the prior removal order in 1998 was invalid, and so cannot be the predicate of the pending charge. Dismissal is denied.

**BACKGROUND**

The salient facts are undisputed. Cisneros-Panameno came to the United States from El Salvador in the mid-1980s as an agricultural worker. Dkt. No. 43-1 at 3. He was granted temporary residency in 1988, *id.*, and lawful permanent residency in 1990. Dkt. No. 43-2 at 3. Between 1990 and 1996, Cisneros-Panameno was convicted in California five separate times of driving under the influence. Dkt. No. 48-4 at 2. On the last occasion, he was sentenced to two years in prison. Dkt. No. 43-3 at 2. In 1998, the United States revoked his lawful residency status and removed him from the country on the grounds that his offense (DUI with priors) constituted a crime of violence under the Immigration and Nationality Act (INA). *See* Dkt. No. 48-12 at 2; Dkt. No. 43-6 at 2.

The removal proceedings played out over the course of six hearings before two immigration judges. The hearings relevant to this motion occurred on January 22, April 10, and

April 24, 1998.[1] Cisneros-Panameno did not appeal the removal order to the Board of Immigration Appeals or the Ninth Circuit. *See* Dkt. No. 42 at 3.

The Ninth Circuit and Supreme Court subsequently determined that DUI offenses like Cisneros-Panameno's were not crimes of violence under the INA. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004) (DUI with serious bodily injury is not a crime of violence); *Montiel-Barraza v. I.N.S.*, 275 F.3d 1178, 1180 (9th Cir. 2002) (statute Cisneros-Panameno was convicted under does not state a crime of violence).

Cisneros-Panameno reentered the United States twice more, once in 1998 and again in 2010. *See* Dkt. No. 48-13 at 3; Dkt. No. 48-19 at 2. On this second occasion, he was convicted of illegal reentry in the Western District of Texas in 2011, before being removed again in 2015. Dkt. No. 48-19 at 2; Dkt. No. 48-20 at 2.

## DISCUSSION

### I. LEGAL STANDARDS

Federal Rule of Criminal Procedure Rule 12(b)(1) states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." A pretrial motion to dismiss a criminal case may be brought "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (citations omitted). A district court "may make preliminary findings of fact necessary to decide the questions of law presented by pretrial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Id.* (internal quotations and citations omitted). Both sides have submitted declarations and exhibits in support of their arguments. Neither side has requested an evidentiary hearing.[2]

A defendant facing an unlawful reentry charge may challenge the prior removal when: (1) he "exhausted any administrative remedies that may have been available to seek relief against the

---

[1] Cisneros-Panameno also had hearings on February 4, February 28, and March 10, 1998.

[2] The Government's request to strike the declaration of Dorien Ediger-Soto, Dkt. No. 48-1, is terminated. The Court did not find the declaration to be relevant, and did not rely on it in deciding the question of dismissal.

order (8 U.S.C. § 1326(d)(1));" (2) the deportation proceedings improperly deprived him of the opportunity for judicial review (*id.* 1326(d)(2)); and (3) the entry of the order was fundamentally unfair (*id*. 1362(d)(3)). A defendant must show that he meets all three requirements in order to obtain relief. *United States v. Palomar-Santiago*, 593 U.S. 321, 329 (2021).

**II. SECTION 1326(D)**

As the record demonstrates, and the parties agree, Cisneros-Panameno did not appeal the 1998 removal order. *See* Dkt. No. 42 at 3; Dkt. No. 48 at 1. Even so, Cisneros-Panameno says he may challenge it now because he made waivers of appeal and right to counsel that were not "considered or intelligent," and so was unfairly deprived of judicial review. Dkt. No. 42 at 3-4.

The point is not well taken. To start with the question of waiving an appeal, Cisneros-Panameno's reliance on a question of Spanish language interpretation is misplaced. He says that, during his first hearing, a Spanish-language translator told him that the judge believed the DUI conviction to be a crime of violence. Dkt. No. 42 at 20; Dkt. No. 51 at 15. The Government disagrees that was so, but the dispute is of little moment here. Even if Cisneros-Panameno were wrongly advised that his conviction was a crime of violence, a misstatement of the law by an immigration judge does not constitute an unfair denial of the right to appeal a removal order. *See United States v. Valdivias-Soto*, 112 F.4th 713, 728 (9th Cir. 2024) (statement by immigration judge that a defendant was "ineligible" for relief did not mislead the defendant into thinking the appeal is futile or invalidly waiving his rights).

Cisneros-Panameno also overlooks evidence in the record indicating that the same immigration judge expressly stated at the hearing that he and other defendants present that day had the "right to appeal almost any decision that I or any other person might make in your case." Dkt. No 43-6 at 13. The judge specifically asked Cisneros-Panameno if he understood that right, to which he replied "yes." *Id.* at 14. Cisneros-Panameno suggests that comments made during the April 10 and April 24 hearings implied that he could appeal only whether he would be removed to Mexico or El Salvador. *See* Dkt. No. 42 at 21-23. But the record does not indicate that the immigration judges told Cisneros-Panameno that he could appeal *only* this decision and nothing

else. The colloquy with Cisneros-Panameno about understanding his right to appeal generally sharply undercuts this suggestion.

Cisneros-Panameno says a written order after the April 10 hearing wrongly stated that he had waived his appellate rights. Dkt. No. 42 at 22. But the judge expressly asked Cisneros-Panameno about making an appeal at the April 24 hearing, which effectively mitigating any possible confusion from the written order. *See* Dkt. No. 43-10 at 2.

Cisneros-Panameno's contentions with respect to right to counsel are equally misdirected. He says that he was misled into waiving the right to counsel, and so was unfairly deprived of competent legal help with administrative and judicial review, because he was told he would need to pay for an attorney himself and was not made sufficiently aware of the availability of pro bono legal representation. *See* Dkt. No. 42 at 17. In his view, this runs afoul of the Ninth Circuit's command that "[a]n [immigration judge] does not adequately advise respondents by telling them that if they want an attorney, they must 'hire' one." *Valdivias-Soto*, 112 F.4th at 724.

The record again rebuts this theory. As the immigration judge at Cisneros-Panameno's first hearing stated:

> During the hearing, *you have the right to be represented by an attorney* or by another individual who is authorized and qualified to represent a person in Immigration Court.
>
> Now, your attorney or representative, is not at the government's expense. This is not like a criminal proceeding where the government gives you an attorney. You simply have the right to get one if you wish. Now, do you all understand you have the right to have an attorney or representative help you in your case?

Dkt. No. 43-6 at 5 (emphasis added). This is an accurate description of the right to counsel in immigration proceedings. Unlike in criminal cases, "there is no right to appointed counsel in removal proceedings" but "respondents who are unable to afford an attorney may still obtain representation." *Valdivias-Soto*, 112 F.4th at 723.

The immigration judge also plainly explained the availability of low cost and free legal services:

> You should've been given a legal aid list when you got that notice of today's hearing. I have a copy to show you now . . . *The organizations*

> *on that list will sometimes represent persons in removal proceedings at no or low cost to the individual.*

Dkt. No. 43-6 at 6 (emphasis added). The hearing transcript indicates every individual present, which included Cisneros-Panameno, was given a copy of the list. *Id.* The parties quibble a bit about the actual content of the list, but the salient point is that Cisneros-Panameno was expressly advised that obtaining free legal counsel was a possibility in his case.

Overall, nothing in record indicates that Cisneros-Panameno was misled on the question of access to a lawyer. It may be that the immigration judge did not guarantee that a lawyer could be had in all cases, but that is not the test here. What matters is that there was no affirmative misrepresentation about the rights available to Cisneros-Panameno. *See United States v. Nunez*, 140 F.4th 1157, 1164 (9th Cir. 2025).

*Valdivias-Soto* does not point to a difference conclusion, as Cisneros-Panameno urges. To start, the facts there are materially different. In that case, the translator said that the defendant would need to "hire" an attorney. *Valdivias-Soto*, 112 F.4th at 719. Here, the immigration judge used plainer and more open-ended language that did not communicate an absolute necessity of hiring a lawyer at personal cost.[3] In addition, the defendant in *Valdivias-Soto* suffered from severe neurocognitive disabilities stemming from "a history of traumatic brain injury dating back to his childhood" that left him, at 45 years old, unable to "read or write in in English or Spanish . . . [or] to understand complex information." *Id.* at 718-19. That is not the situation here.

It bears mention that our circuit has clarified the scope *Valdivias-Soto* in subsequent decisions. Recent decisions emphasize that *Valdivias-Soto* "goes no further [than] simply finding that when a litigant is *actively misled* as to the rights available to him, such procedural error may excuse a failure to exhaust." *Nunez*, 140 F.4th 1157 at 1165 (emphasis in original). *Nunez* also stated that *Valdivias-Soto* enunciated a "limited proposition" that "only if the [immigration judge] misled the defendant" might the case fall into "the exceedingly narrow set of circumstances in

---

[3] At his April 10, 1998 hearing, the immigration judge did tell Cisneros-Panameno that he could "hire" an attorney. Dkt. No. 43-8 at 2. But this was months after the conversation where he was told about the free or low-cost legal services. It was also months after Cisneros-Panameno appeared both pro se and with counsel. *See* Dkt. No. 42 at 17-18.

United States District Court
Northern District of California

which a failure to exhaust may be excused." *Id.* at 1164-65 (internal quotation marks omitted). Cisneros-Panameno overreads *Valdivias-Soto* in light of these later holdings. to the much less misleading statements made by the immigration judge in this case.

**IT IS SO ORDERED.**

Dated: August 17, 2026

JAMES DONATO
United States District Judge