UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOSE ALBERTO CISNEROS-PANAMENO,<br>Defendant. | Case No. 25-cr-00359-JD-1<br>**ORDER RE MOTION TO SUPPRESS** |

In this prosecution for illegal entry into the United States under 18 U.S.C. §§ 1326, defendant Jose Cisneros-Panameno asks to suppress fingerprints, photographs, and immigration information obtained by the California Highway Patrol (CHP) in connection with a traffic stop. Dkt. No. 52 at 1. Cisneros-Panameno's main contention is that the evidence was the fruit of a stop that was unlawfully prolonged in violation in the Fourth Amendment. *Id.* Suppression is denied.

The salient facts are undisputed, and neither party has requested an evidentiary hearing. In pertinent summary, on April 16, 2025, CHP officer Jeremy Gilmore stopped Cisneros-Panameno for driving without a license plate and towing uncovered cargo. Dkt. No. 53-1 at 3. After Cisneros-Panameno gave Officer Gilmore his license, Officer Gilmore returned to his patrol car for a records check and inquiry into outstanding warrants. *Id.* The checks came back as "clear," but indicated that Cisneros-Panameno was a sex offender, and that information about his registration status, including whether he was in compliance with applicable registration requirements, was missing. Dkt. No. 58 at ¶ 6. Officer Gilmore returned to Cisneros-Panameno's vehicle to discuss the sex offender registration issue, and whether he was still on probation for the offense. *Id.* at ¶ 8-9. After that, Officer Gilmore went back to his patrol car and continued to investigate Cisneros-Panameno's registration status by contacting dispatch. *Id.* at ¶ 9-10. When

all searches turned up empty, Officer Gilmore released Cisneros-Panameno from the scene. *Id*. at ¶ 11.

Over the next few days, Officer Gilmore followed up with the California Department of Justice for more information about Cisneros-Panameno's registration status. Dkt. No. 53-1 at 3. After discovering that Cisneros-Panameno had not registered since 2009, the State of California charged him with failing to register as a sex offender under Cal. Penal Code § 290.018(b) in April of 2025. Dkt. No. 56-3. In August 2025, the United States took Cisneros-Panameno into custody on the charge of illegal reentry following removal by a felon, in violation of 8 U.S.C. § 1326. *See* Dkt. No. 20.

Overall, these undisputed facts do not add up to an impermissibly prolonged stop in which an officer went fishing for evidence without cause. A traffic stop is a brief encounter, where "the tolerable duration of police inquiries . . . is determined by the seizure's 'mission.'" *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). That mission "address[es] the traffic violation that warranted the stop" and "attend[s] to related safety concerns." *Id.* "Authority for the seizure thus ends . . . when tasks tied to the traffic infraction are -- or reasonably should have been -- completed." *Id.* Tasks unrelated to the mission are unlawful if they add time to the stop. *See United States v. Evans*, 786 F.3d 779, 785-86 (9th Cir. 2015). But an officer may continue with a stop to investigate new matters so long as he or she has a reasonable suspicion of an independent offense. *See United States v. Taylor*, 60 F.4th 1233, 1239 (9th Cir. 2023). The reasonable suspicion must be based on information made available to the officer during the traffic-related tasks. *See United States v. Steinman*, 159 F.4th 550, 561-62 (9th Cir. 2025). The traffic-related tasks must be what alert the officer to the potential criminal conduct. *See United States v. Landeros*, 913 F.3d 862, 868 (9th Cir. 2019). If the officer, at any point, departs from traffic-related tasks and conducts a fishing expedition into unrelated criminal conduct that he or she does not already have a reasonable suspicion for, then the stop may have been unlawfully prolonged. *See Evans*, 786 F.3d at 787-88.

Reasonable suspicion "is not a particularly high threshold to reach and is less than probable cause or a preponderance of the evidence." *Taylor*, 60 F.4th at 1241 (cleaned up).

United States District Court
Northern District of California

Officers can make "commonsense judgments and inferences about human behavior," *Kansas v. Glover*, 589 U.S. 376, 380-81 (2020), and may "draw on their own experience and specialized training" to arrive at conclusions "that might well elude an untrained person," *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (internal citations omitted).

Here, Officer Gilmore did not unlawfully prolong the stop because he had a reasonable suspicion that Cisneros-Panameno was violating California law by failing to register as a sex offender. The sex offender designation for Cisneros-Panameno came back with no additional details on his compliance or registration status. Officer Gilmore stated that he found this "odd" because, based on his training and experience, "there are usually details on [the] computer stating whether an individual is compliant with their sex registration." Dkt. No. 58 at ¶ 6. Officer Gilmore had seen roughly twenty instances of people who were required to register for fire or sex offenses, and knew what it looked like when they were in and out of compliance with their registration requirements. *Id.* at ¶ 1. Consequently, Officer Gilmore suspected that Cisneros-Panameno was not registered, leading to the missing information. *Id.* at ¶ 6.

These facts establish that Officer Gilmore had a reasonable suspicion to investigate a potential violation of California's sex offender laws by Cisneros-Panameno. Officer Gilmore reasonably viewed the absence of information as strange, and this circumstance formed a "particularized and objective basis" for his suspicions. *United States v. Rodriguez*, 976 F.2d 592, 595 (9th Cir. 1992).

Cisneros-Panameno did not identify a good reason to conclude otherwise. He says that the missing information was a blank slate indicative of nothing, and so it was unreasonable for Officer Gilmore to continue to investigate. Dkt. No. 59 at 2, 5. But this ignores Officer Gilmore's training and experience, and the "common-sense judgments and inferences" these foundations allowed him to make. *Glover*, 589 U.S. at 380-81. Because Officer Gilmore could "draw on [his] own experience and specialized training," he was not required to accept "an absence of reliable recordkeeping" to the exclusion of all other explanations, as Cisneros-Panameno urges. *Valdes-Vega*, 738 F.3d at 1078; Dkt. No. 59 at 5. Rather, he could reasonably conclude that the absence of information indicated that something was wrong with Cisneros-Panameno's registration status.

This reasonable suspicion arose as the result of tasks that were tied directly to the mission of the traffic stop. Neither party disputes that Officer Gilmore's initial records check was part of the "ordinary inquiries incident to [the traffic] stop." *Rodriguez*, 575 U.S. at 355. This check brought back the conspicuous lack of information on Cisneros-Panameno's registration status. Officer Gilmore did not at any point take a detour from the mission of the traffic stop before he formed his reasonable suspicion that Cisneros-Panameno may be out of compliance with California's sex offender registration requirements. Consequently, Cisneros-Panameno cannot suppress the resulting evidence on the basis that Officer Gilmore prolonged the stop to obtain it. *See Steinman*, 159 F.4th at 566.

The stop here was materially different from those determined to be unlawful in other cases. In *Evans*, for example, the court concluded that an officer unlawfully prolonged a stop because there was no reason to suspect that the suspect's registration was non-compliant. *Evans*, 786 F.3d at 786. He simply knew that the suspect was a felon, and then decided to conduct a separate, unsupported investigation into the suspect's registration status. *Id.* at 786-87. No such break in continuity occurred here because the records check alerted Officer Gilmore that there was a registration issue.

So too in *Landeros*, where the court concluded that an officer unlawfully prolonged a traffic stop when he demanded identification from a passenger without reasonable suspicion of any criminal wrongdoing. *Landeros*, 913 F.3d at 868. The distinguishing factor again is that the officer had no grounds to reasonably suspect that the passenger was violating the law. *Id.*

It bears mention that our circuit has approved stops akin to the one here. In *Taylor*, the court determined that an officer could search a driver's car for firearms when he was wearing an unzipped fanny pack across his chest. *Taylor*, 60 F.4th at 1242. That was so because the officers testified that, in their experience, fanny packs are often used to store weapons, and it was "odd" that the driver was wearing an empty one. *Id.* When combined with the driver's criminal history and traffic infraction, the court held that the officers had reasonable suspicion to prolong the stop and check for weapons. *Id.* In *Steinman*, our circuit concluded that an officer had a reasonable basis to search a driver's car for weapons after a criminal history check revealed a felony, and

there was a box of ammunition in the back seat. *Steinman*, 159 F.4th at 562, 566-67. Officer Gilmore acted on the basis of similarly reasonable suspicions that arose within the scope of the traffic stop of Cisneros-Panameno.

**IT IS SO ORDERED.**

Dated: August 18, 2026

JAMES DONATO
United States District Judge

United States District Court
Northern District of California